

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MARIA GUADALUPE VEGA, | § | Case No. 06-70118 |
|     Debtor(s). | § | |
| | § | Chapter 13 |
| | § | |
| MARIA GUADALUPE VEGA, | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 10-07025 |
| | § | |
| AURELIO GARZA, *et al*, | § | |
|     Defendant(s). | § | Judge Isgur |

## MEMORANDUM OPINION

The question before the Court is whether Wells Fargo Bank received notice of Vega's bankruptcy filing and is therefore bound by the confirmed plan and the discharge injunction. The Court finds there is no genuine issue of material fact that Wells Fargo did not receive notice. The Court grants Wells Fargo's Motion for Summary Judgment based solely on the determination that Wells Fargo received no notice of the bankruptcy filing. Therefore, the Court need not rule on the remaining portions of Wells Fargo's Motion for Summary Judgment.

### Factual Background

In 1986, Defendants Aurelio Garza and Anita Garza executed a Real Estate Lien Note (the "Garza Note") in favor of Valley Federal Savings and Loan Association on real property located at 114 W. Quince in McAllen, Texas. (ECF Doc. 40 at 1). A Deed of Trust secured payments under the Garza Note. (*Id.* at 2). The Garza Note was sold and resold on multiple occasions. Washington Mutual Bank eventually assigned the Garza Note and its rights under the Deed of Trust to Defendant Wells Fargo Bank on January 26, 2007. (*Id.*).

In early 1998, the Garzas granted Maria Guadalupe Vega an Assumption Warranty Deed to the property. (*Id.*). The agreement between them, as Vega understood it, was for Vega to pay the Garzas directly, who would then forward the money to whichever entity currently held the Garza Note. Once all payments were made, Vega was to receive title to the property.

Vega filed chapter 13 bankruptcy on March 31, 2006. (Case No. 06-70118, ECF Doc. 1). Although Wells Fargo's predecessor in interest, Washington Mutual Bank, held the Garza Note at the time, Vega did not list Washington Mutual as a secured creditor in her schedules. (*Id.*). Vega did list the Garzas as secured creditors. (*Id.*). Vega mentions the "wrap-around note"[1] on her Real Property Schedule. (*Id.*). Vega understood Washington Mutual held an interest in the property, and the Court in no way finds Vega intentionally did anything untoward. Still, it is clear from Vega's schedules and creditor matrix that Washington Mutual did not receive notice of the bankruptcy filing. (*Id.*).

Vega made all payments under the plan and received a chapter 13 discharge on August 9, 2010. (Case No. 06-70118, ECF Doc. 111). While the reason remains in dispute, not all of Vega's payments to the Garzas made their way to Wells Fargo. On August 16, 2010, Wells Fargo gave notice of its intent to accelerate the loan and sell the property through a foreclosure sale. (ECF Doc. 40 at 3). On September 3, 2010, Vega sued the Garzas and Wells Fargo in a Texas state court. (*Id.*). Vega removed the action to this Court on September 29, 2010. (ECF Doc. 1).

Wells Fargo filed a Motion to Dismiss for failure to state a claim on October 19, 2010. (ECF Doc. 5). On April 4, 2011, during a hearing on Vega's Motion for a Temporary Restraining Order to stop the foreclosure, the Court found, based on the limited evidence before

---

[1] As part of the entry under "Description and Location of Property," Vega wrote of the real property in question: "Washington Mutual is the lienholder to Aurelio & Anita Garza and Mr. & Mrs. Garza are the lienholders to the debtor." (*Id.*).

it, that Wells Fargo did not receive notice of the bankruptcy filing.  The Court held Wells Fargo is not bound by the confirmed plan and denied Vega's Motion for a Temporary Restraining Order.  Vega argued that Wells Fargo did not produce all loan servicing records.  The Court did not rule on Wells Fargo's Motion to Dismiss and allowed discovery to continue.  The Court warned Wells Fargo that, if it continued with the foreclosure and Vega later uncovered evidence that it did receive notice, sanctions would result.  The Court ordered Vega to file an affidavit stating which loan servicing records were missing and ordered Wells Fargo to file an affidavit explicitly stating it did not receive notice of the bankruptcy filing.

Wells Fargo filed a Motion for Summary Judgment on July 25, 2011.  (ECF Doc. 40).[2] Wells Fargo repeated the contention that it did not receive notice of Vega's bankruptcy filing but did not address the allegation of missing discovery.  (*Id.*). Vega responded on August 25, 2011, alleging that Wells Fargo did not produce "system note files" prior to early 2009.  (ECF Doc. 41-7).  The Court ordered Wells Fargo to produce all "system note files" in its possession and allowed Vega the opportunity to file an additional response.  (ECF Doc. 43).

Wells Fargo filed its supplemental reply on September 20, 2011, accompanied by the affidavit[3] and the "system note files."  (ECF Doc. 45).  Vega filed an amended response on October 11, 2011.  (ECF Doc. 46). Vega admits that, for any of the claims to survive a motion for summary judgment, she must demonstrate there is a genuine issue of material fact regarding notice. (ECF Doc. 46 at 4).

---

[2] As pointed out by Vega, the Court set this deadline for a motion for summary judgment as to the notice question only.  Much of Wells Fargo's motion deals with other issues.  Nonetheless, all parties and the Court agreed at the prior hearing that in order to survive a motion for summary judgment Vega would have to show a genuine issue of material fact as to the notice question.  In the Motion for Summary Judgment, Wells Fargo repeats its contention that it did not receive notice of the bankruptcy.

[3] The Court interprets paragraph 5 of Cindy Shanabrook's affidavit as the required explicit statement that Wells Fargo did not receive notice of the bankruptcy. (ECF Doc. 45-1 at 3).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[4]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object

---

[4] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

Notice in accordance with due process must be notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank. Trust Co.*, 339 U.S. 306, 314 (1950). Vega argues a genuine issue of material fact exists as to whether Wells Fargo received notice of the bankruptcy filing because: (1) Wells Fargo failed to file an affidavit explicitly stating it lacked notice of the bankruptcy filing, as required by the Court; (2) the Garzas' attorney notified Washington Mutual in 2005 of Vega's interest in the property; and (3) the loan files indicate the Garzas notified Wells Fargo of Vega's bankruptcy as early as 2008. (ECF Doc. 46 at 2-6).  These arguments are not persuasive and fail to establish a genuine issue of material fact.

Even if Vega were correct that failure to file the required affidavit establishes a genuine issue of material fact as to notice, the Court interprets the affidavit of Cindy Shanabrook as meeting this requirement.  (ECF Doc. 45-1 at 3).

The second argument fails because the 2005 letter from the Garzas' attorney to Washington Mutual is only a notice of Vega's possible interest in Washington Mutual's collateral.  (ECF Doc. 46-2).  It is not a notification of Vega's bankruptcy filing, which would have been impossible at the time as Vega did not file for bankruptcy until 2006.

The argument that the loan files indicate the Garzas notified Wells Fargo that someone with an interest in their collateral filed bankruptcy similarly fails.  As evidence, Vega points to four entries in the loan files relating to conversations between the Garzas and a Wells Fargo employee:

(1)     March 13, 2008: "Borrowers don't live in the house other people do they were supposed to be paying the bills but they filied bkcy borrowers been paying for last 5 years" (ECF Doc. 45-3 at 162).

(2)     March 31, 2008: "RFD: B1 stated he is going thro a assumption with tenants in property and the tenants are going thro a bk and he can only pay eom." (*Id.*).

(3)     June 30, 2008: "RFD: Assumption ddn't go thru, sd people that were assuming the loan filed bankruptcy, so he's mkng" (*Id.* at 159).

(4)     May 29, 2009: "Tenants that were supposed to assume the loan did not complete and filed bk." (*Id.* at 55).

(ECF Doc. 46 at 2-3).

These entries in no way establish notice that someone with an interest in Wells Fargo's collateral filed bankruptcy.[5]  When the entries are not vague or ambiguous, they tend to indicate to Wells Fargo that it was not a creditor in an ongoing bankruptcy.  The first entry indicates that the Garzas no longer live in the home and that unknown individuals, who the Garzas claim were supposed to be paying the bills, filed for bankruptcy.  Any ambiguity as to whether Garza told or indicated to Wells Fargo these individuals held an interest in its collateral is answered by the remaining entries.  The second entry indicates the assumption process is ongoing but not yet complete.  The last two entries state specifically that the tenant, who is in bankruptcy, did not end up assuming the loan.  If any notice can be deduced from these entries it would be that whoever filed for bankruptcy did not hold an interest in Wells Fargo's collateral.[6]

---

[5] Even if these entries did establish notice, given that the earliest entry is two years after Vega's bankruptcy filing, there would be a question as to the efficacy of the notice.

[6] Any argument that adequate notice is established by a combination of the letter sent to Washington Mutual, Wells Fargo's predecessor in interest, and Wells Fargo's loan file entries also fails.  Even if it were feasibly possible for Wells Fargo to have connected all the dots, the Court cannot fault Wells Fargo for failing to do so.  Even the letter

## Conclusion

The Court will issue an Order in accordance with this Memorandum Opinion.  Wells

Fargo will be dismissed as a defendant.

SIGNED **October 28, 2011.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

and the loan entries combined do not create a genuine issue of material of fact whether there was notice sufficient to meet the *Mullane* standard.